**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**QI SUN** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 1:25-CV-99-JHM**

**STEPHEN HARMON, *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Qi Sun filed this *pro se* a 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some claims, allow some claims to proceed, and permit Plaintiff to file a second amended complaint.

**I.**

On July 24, 2025, Plaintiff, a convicted prisoner, initiated this civil-rights action against the Warren County Regional Jail ("WCRJ") Jailer Stephen Harmon, WCRJ Head Nurse Nora Janes, WCRJ Major Amir Zigar, and WCRJ Dr. Scott Wilson in their official capacities for violations of his rights secured under the First, Eighth, and Fourteenth Amendments. [DN 1]. On October 24, 2025, Plaintiff tendered a "supplemental statement," which the Court construes as an amended complaint, clarifying the scope and basis of his complaint. [DN 20].

Plaintiff represents that he was lodged at WCRJ between May 2024 and approximately August 2025. As way of background, Plaintiff states that, in June 2024, he was attacked by an inmate, "sexually assaulted verbally", and smacked in the head. Plaintiff maintains that no jail deputies intervened. Plaintiff claims that he reported the incident, but jail officials did not notify him if the offender was charged. Plaintiff alleges that, at that time, Jailer Harmon and the pod operator deputy violated his Eighth Amendment rights by placing him in a cell with an inmate who

was aggressive, violent, and "with sexual assault PREA[1] issue" and by failing to watch the surveillance camera which permitted an inmate to assault him.

Plaintiff alleges that Jailer Harmon and other jail officials violated his First Amendment and Eighth Amendment rights in a separate incident by putting him in a protective-custody cell with an inmate who had a violent history and previously attacked other inmates. Plaintiff represents that he was assaulted by the inmate on April 1, 2025, and that this assault is the "primary event forming the basis of his lawsuit." Plaintiff also contends that even though he was a federal inmate, jail officials unconstitutionally placed him in cells with non-federal inmates. Additionally, Plaintiff alleges that jail officials delayed in responding to the assault. Plaintiff claims that he was badly injured with a head concussion, headache, blurriness in his left eye with light flashing symptoms, sharp ringing in his ear, back and neck pain, front neck swollen, a two-inch cut on his inner lip, swollen face, cheek bone fracture, broken jaw, lower back injury, trauma, and depression.

Plaintiff argues that jail officials including Jailer Harmon knew he faced a substantial risk of serious harm from a potential assault because the offender had attacked another inmate prior to being placed in the cell with Plaintiff and because of Plaintiff's previous assault. Plaintiff maintains that the June 2024 incident demonstrates that Jailer Harmon and jail administration had prior knowledge of the risks to Plaintiff's safety but failed to take appropriate measures to prevent a subsequent assault.

Plaintiff also avers that the medical head nurse Nora Janes and Dr. Scott Wilson violated his First and Eighth Amendment rights by not permitting him to see an eye doctor after he was attacked. Plaintiff contends they acted with deliberate indifference by ignoring his requests to see an eye doctor. He represents that he submitted medical requests on April 9 and April 12, 2025,

[1] PREA stands for Prison Rape Elimination Act.

and grievances on May 20 and May 23, 2025, regarding not being able to see an eye doctor for the vision damage. He states that after several medical requests, Janes and Dr. Wilson permitted him to see a face surgeon for his broken cheek who also recommended Plaintiff see an eye doctor. Despite this recommendation, Plaintiff contends that Jailer Harmon and the medical staff did not permit him to see an eye doctor. After filing a grievance, he was permitted to see only Dr. Wilson who did not refer him to an eye doctor. Plaintiff further asserts that Janes and the medical staff violated his First Amendment rights by denying his prostate-specific antigen ("PSA") test after notifying these individuals he was feeling pain and discomfort in his lower belly and having trouble urinating.

Plaintiff claims that Janes and Jailer Harmon also violated his constitutional rights by charging Plaintiff medical fees when he is a federal inmate. Plaintiff contends that by charging him a medical fee each time he goes to see the nurse, the jail officials and the medical department knowingly practice fraudulent action towards him and the federal government.

Plaintiff maintains that Jailer Harmon and jail officials violated the Eighth Amendment by requiring him to sleep on the ground three weeks after the assault despite his back injuries from the assault and despite being a federal inmate.

Plaintiff also asserts that Jailer Harmon, Major Ziga, and commissary staff violated his constitutional rights by allowing identity theft in the jail. Plaintiff represents that these individuals permitted other inmates to steal his property. Plaintiff maintains that on January 6, 2025, he left WCRJ for a court proceeding and inadvertently left his "armband" on the table in his protective custody cell. Plaintiff states that an inmate named David took his armband and stole his commissary order without his consent. Plaintiff complains that the canteen staff did not verify his

identity and gave his purchase to David. Plaintiff contends that the pod officer knew he was not in his cell room at the time and did not communicate with the canteen commissary staff.

Plaintiff alleges that Jailer Harmon and Major Ziga also violated the Fourteenth Amendment by punishing him with a 30-day order restriction for other's negligence. Plaintiff represents that when he filed a grievance regarding the commissary incident and asked for a refund, Major Ziga "came and told me it's my fault that I didn't take my armband with me and punished me with commissary restriction when I'm the victim." Plaintiff states that the jail never refunded his money nor advised him if the other inmate was charged.

As relief, Plaintiff seeks damages and injunctive relief in the form of removing the individual Defendants from their positions.

**II.**

Because Plaintiff was a prisoner seeking relief against governmental entities, officers, and/or employees at the time he filed suit, this Court must review Plaintiff's complaint under 28 U.S.C. § 1915A.[2] Under § 1915A, the Court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

[2] While Plaintiff has now been released from custody, a plaintiff's status as a "prisoner" under § 1915 "turns on whether the inmate was confined when suit was filed." *Lapine v. Romanowski*, No. 15-CV-11362, 2015 U.S. Dist. LEXIS 76056, at *2–3 (E.D. Mich. June 12, 2015) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 669 n.1 (7th Cir. 2012)).

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**III.**

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Plaintiff sues Defendants Jailer Harmon, Janes, Zigar, and Dr. Wilson in their official capacities. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)

(quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Jailer Harmon and Zigar are actually against their employer, Warren County. Likewise, Plaintiff's claims against Janes and Dr. Wilson are actually against their employer, Comprehensive Correctional Care ("CCC").

**A. Warren County**

When a § 1983 claim is made against a municipality or county, such as Warren County, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county as an entity is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality or county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691. The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

*1. Deliberate Indifference to Inmate Safety*

Plaintiff alleges that Defendants were deliberately indifferent to a serious risk of harm by failing to protect him from violence at WCRJ from other inmates. Plaintiff asserts that WCRJ staff and leadership were aware of this unsafe condition, but WCRJ did not take reasonable measures to safeguard inmates such as Plaintiff. The Court construes the complaint as alleging claims for deliberate indifference to inmate safety or failure to protect against Warren County. Because Plaintiff was a convicted prisoner at the time of the events in question, his claim is governed by the Eighth Amendment. *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 945 (6th Cir. 2022).

The First Amendment does not apply to this claim, and claims brought under the First Amendment will be dismissed for failure to state a claim upon which relief may be granted.

Based on Plaintiff's allegations, the Court finds that Plaintiff has stated a plausible Eighth Amendment claim of failure to protect against Warren County and will allow this claim to proceed. In doing so, the Court passes no judgment on its merit or upon its ultimate outcome.

*2. Housing with Non-Federal Inmates*

Plaintiff claims that federal inmates should not be housed with non-federal inmates. However, there is no constitutional requirement that state, federal, and county inmates be housed separately. *See*, *e.g.*, *Ward v. Maglinger*, No. 4:25CV-P11-JHM, 2025 WL 1532581, at *4 (W.D. Ky. May 29, 2025); *Brandon v. Harmon*, No. 1:20CV-P199-GNS, 2021 WL 1601552 (W.D. Ky. Apr. 23, 2021) ("An inmate does not enjoy a constitutional right to be housed in any particular facility or a particular part of a facility."). Therefore, the Court will dismiss this claim for failure to state a claim for which relief may be granted.

*3. Health Care Fee*

Plaintiff asserts that Warren County violated his constitutional rights by charging him a fee or co-pay for seeing the nurse or doctor at WCRJ despite him being a federal inmate. However, "[i]t is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay." *White v. Cor. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)); *see also Clayborne v. Zerbst*, No. 22-CV-145-PP, 2022 WL 7578630, at *5 (E.D. Wis. Oct. 13, 2022); *Mayfield v. Henderson Cnty. Det. Ctr.*, 4:08-CV-62-M, 2009 WL 1408251, at *2 (W.D. Ky. May 18, 2009). Plaintiff received the care for which he was charged, and his belief that it is

unconstitutional to charge federal inmates a fee for medical visits is incorrect. The Court will dismiss this claim for failure to state a claim for which relief may be granted.

*4. Conditions of Confinement, Identity Theft, Improper Punishment*

Plaintiff also claims that Warren County violated his constitutional rights by requiring him to sleep on the floor, permitting another inmate to use his armband in the commissary, and punishing Plaintiff for leaving his armband in his cell. With respect to these claims, Plaintiff does not allege a policy or custom that was the moving force behind the alleged constitutional violations, but instead he alleges incidents affecting him only. Accordingly, the Court will dismiss these claims against Warren County for failure to state a claim upon which relief may be granted. *See Matthews v. LMPD*, No. 3:19-CV-P581-RGJ, 2019 WL 5549209, at *2 (W.D. Ky. Oct. 25, 2019) ("an isolated occurrence affecting only" the plaintiff would not amount to a policy or custom endorsed by the defendant for purposes of a municipal liability claim) (citing *Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999)). The Court will dismiss these claims for failure to state a claim for which relief may be granted.

**B. CCC**

The same analysis that applies to § 1983 claims brought against municipalities under *Monell* also applies to private corporations contracted to provide medical services to inmates. *See, e.g.*, *Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012). To support a § 1983 claim against CCC, Plaintiff must show that one of its policies or customs violated federal law and caused him harm. *See Monell*, 436 U.S. at 691; *Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) ("A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function.") (citing *Johnson v. Karnes*, 398 F.3d

868, 877 (6th Cir. 2005)). Thus, liability of CCC must be based on a policy or custom of the entity as well.

Here, Plaintiff does not allege a policy or custom that was the moving force behind the alleged constitutional violations by the medical defendants. Accordingly, the Court will dismiss the claim against CCC and Defendants Janes and Wilson in their official capacities for failure to state a claim upon which relief may be granted.

**C. Amended Complaint**

Before the Court issues a service and scheduling order in this matter, the Court will allow Plaintiff the opportunity to file a second amended complaint in which he (1) names as defendants the individual WCRJ officers and medical defendants whose actions he alleges violated his rights under the Eighth Amendment and (2) describes the actions allegedly taken by each. *See, e.g., LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) [of the Federal Rules of Civil Procedure,] a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act]."). If Plaintiff chooses to file an amended complaint, the Court will perform an initial review on that filing pursuant to § 1915A.

**IV.**

For the foregoing reasons, **IT IS ORDERED** as follows:

1. Plaintiff's Eighth Amendment deliberate indifference to inmate safety or failure to protect claim against Warren County is allowed to proceed. All remaining claims are **DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted**.

2. Because no claims remain against them currently, the **Clerk of Court** is **DIRECTED** to **terminate Defendants Harmon, Janes, Zigar, and Wilson in their official capacities and to add Warren County as a Defendant**.

3. **No later than March 31, 2026, Plaintiff may file a second amended complaint.** If Plaintiff fails to timely file an amended complaint, the Court will enter a service and scheduling order to govern the development of the claim the Court has allowed to proceed.

4. The **Clerk of Court** is **DIRECTED** to send Plaintiff a § 1983 complaint form with the words "Second Amended Complaint" and this case number written in the caption.

Date: February 26, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.014